Good morning. May it please the Court, Jennifer Coon for Jose Cuevas. I'd like to reserve two minutes for rebuttal and I'll keep track of that. This appeal presents several issues, but I'd like to focus on two, the delay in presentment to the magistrate judge and the government's destruction or loss of multiple pieces of evidence. If I could turn first to the delay in presentment, it's a rather simple issue. The law is clear. There's a six-hour safe harbor period that can be extended, if reasonable, given the means of transportation and distance to the magistrate judge. But if the delay, further delay is unreasonable, the confession must be suppressed under Corley. That's not a discretionary rule, as the government has advocated, and a delay for purposes of further interrogation is not reasonable. Here it's undisputed that the second interrogation of Mr. Cuevas occurred outside of the six-hour period. He was arrested at 7.30 in the morning. That's at ER 465. The second interrogation began at the six-hour mark at 1.30. That's at ER 514 and 589. So the district court finding that that interrogation occurred within the six hours is clearly erroneous, and it's really not disputed at this stage. So you're about 20 minutes over the six hours, right? Right. There is no reasonable justification for that additional delay. The magistrate judge in El Centro had an afternoon calendar, and he was only 30 minutes away. So this is not a case like Garcia-Hernandez, where there was a shortage of personnel or insufficient information to decide whether to charge Mr. Cuevas with a crime. He'd been found with drugs in his vehicle some six hours previously. And the government has proffered no justification for the delay other than a desire of the agents to question Mr. Cuevas further. So, again, the district court finding that the delay was not for the purposes to obtain a confession, again, is clearly erroneous. And this error was not harmless because it was in the second interrogation that Mr. Cuevas allegedly made the statement about the guy, that he could not tell the truth because the guy would know it came from him and that there would be consequences to his family. And that was very devastating evidence at the trial. And that's the only portion you're seeking to suppress? Is that right? For delay and presentment. For the delay and presentment. And that is correct. It is only slightly over the six-hour period, but nevertheless, it is outside of that safe harbor. And I believe it was the Mallory case that involved questioning within a seven-hour period. So it's not important how much longer it was in the six hours, whereas when here, there's no justification at all for that delay. Does it matter that, in fact, the total time of interrogation was rather short? I think we're talking about a, I guess it's a six-hour and 20-minute period, but the actual interrogation was not something that could become viewed as onerous or overbearing his will. We're talking about effectively a 20-minute or 45-minute session and then another one-hour session, right? Well, correct. And I'm not sure of the exact length of the two sessions, but Your Honor is correct. It was relatively short. I have raised involuntariness issues on another, in my briefs, which I don't think we need to touch on here. But as far as the presentment delay, no, I don't think it matters how long the interrogation was. What matters is that there was a delay in bringing him promptly before the magistrate for no other purpose than interrogating him. It's not Mr. Cuevas's fault that he was kept waiting at the station for some five hours after drugs were found in his car so that the agents could call in other agents to come and arrive and interrogate him and then decide to do a second interrogation. And it was in that second interrogation, which was outside of the six-hour period for no reasonable purpose, that the most damaging alleged statement was made about the guy. And I think that the case should be reversed on that issue alone. Unless Your Honors have further questions, I'll turn to the second issue I'd like to address, which is the destruction of evidence in this case. Here we have not one but multiple instances of the destruction or loss of evidence. We had the car found with allegedly four air fresheners. One of those air fresheners was lost within hours by the time the DEA agents arrived at the Border Patrol station several hours later. One of those four was already gone. The second air freshener was lost before the defense did the car viewing. So we don't know when exactly. What was the importance of the lost air freshener? Well, the agent Lemos, who was the arresting agent, testified that there were four air fresheners that were essentially identical, that two of them were hanging loose in the car, visible to the driver, but the other two identical air fresheners were found inside of the compartment with the narcotics. So it was very important evidence to try to prove or disprove the driver's knowledge of narcotics in the compartment. But we do know that three were the same, right? Three of the air fresheners were, in fact, identical. Well, we don't know. We have pictures of the three from the Border Patrol station. But by the time the defense had an opportunity to see the car, the second air freshener was gone. So there were only two left. So there wasn't, at that point, I felt, any testing that I could do to prove or disprove the arresting agent's allegations that two that were visible exactly matched two in the compartment. The two that were left, where were they from? Were they in the compartment? Well, that's an interesting question. At the car viewing, one of the air fresheners was hanging in the vehicle, and I want to say it was on the turn signal. The other air freshener was sitting at the edge of the trap or the compartment where the narcotics had been found. But Agent Lamos testified in the course of these proceedings that when he found the air fresheners in the trap, he removed them. He didn't leave them in the trap or put them back in the trap. He removed them and put them behind him in the vehicle, he thought, probably on the seat behind him. And yet by the time we get to the photographs at the station and then later at the car viewing, an air freshener has been apparently moved back into the trap. So we couldn't tell from the pictures or from the viewing which air freshener was which or whether they had been moved around. The circumstances were very suspicious. Would it be such a big point for impeachment if, in fact, he said they were identical and maybe some were pine trees and others were oak trees? You know, is that really fundamental to the agent's credibility? I do think it was. Agent Lamos had a very credible demeanor. He was an older Border Patrol agent. He came across very well to the jury. But his handling of the air fresheners was so suspicious and the disappearance of these items of evidence was so suspicious that it would have been very helpful to be able to impeach him on that point. And the government also introduced evidence of multiple other crossings and travel by Mr. Cuevas where air fresheners were and were not hanging visibly in photographs in the vehicle caught by cameras on the side of the road. So I think there was an emphasis on the fact that the driver knows of air fresheners in the vehicle and not being in the vehicle or is manipulating them in and out of the vehicle. And then we have testimony that identical air fresheners were in the truck, which was extremely important evidence in the case. I think this was really an egregious loss or destruction of evidence, not only because of the two air fresheners that were lost, but then subsequently the destruction or disposal of the vehicle in violation of the preservation order. And as it turns out, while litigation on this exact air freshener destruction was pending. So I know the government is going to argue that the exculpatory value of this evidence wasn't apparent to the agents, but certainly by the time of the disposal of the vehicle, the government was on notice that there were issues with its handling of the evidence and improper disposal of the evidence, and yet it disposed of the vehicle in violation of the preservation order. But what did you see in the car from your first inspection that you would have liked to have had it back for a further inspection? What we had was Agent Lemos adding to his testimony each time he came to the stand. And so he had a report which didn't mention air fresheners at all, and it mentioned tampering of air ducts that was apparent from looking inside of the air ducts. But by the time he testified at the evidentiary hearing, which happened to be after the disposal of the vehicle, he also testified that an air duct had been loosened and ripped off, that the air ducts had been cleaned of dust with fingerprints all over them, that styrofoam from the duct had been removed, that the air box had gaps in it. And then by the time of trial, that the compartment also had material that was used to block an X-ray, that the air box had a sponge around it that was falling out. And then by the time of the second trial, he's adding even screwdrivers that he now said he had found in the vehicle but had never logged or put in his report in any way. So as the proceedings wore on,  we had no opportunity to go back to the car or do any further testing on the car to verify his allegations. And I say I'm out of time. Thank you. We'll hear from the government. May it please the Court. Steve Millen for the United States. In this case, the district court did not clearly err in denying the defendant's motion to dismiss for destruction of evidence. In this case, the court properly found that there was no bad faith. What the agent saw was the air fresheners. And he recorded it. I'd like to also note that the defendant knew of the existence of four air fresheners before the defendant did the car viewing, because that became an issue when they went to go do the viewing and said, where are the other air fresheners? Now, the agent, per his normal routine, did not preserve the air fresheners because he characterized that as an observance. What role did the air fresheners play in the evidence? What was the significance of them? The primary significance was that the defendant had air fresheners on his rearview mirror and his turn indicator. That is displayed in the box. But I presume it's not so much that he had the air fresheners, but they matched air fresheners inside the box. Correct. And on the box. So the fact that they were identical was important. Yes. But we're talking about commercially manufactured air fresheners. We're not talking about something that's unique. It's the same foundation as a Coke bottle. You don't have to call the CEO of Coca-Cola or the glassblower to establish the foundation of the Coke bottle. It's something that's commercially made. But I don't see how that really matters. I'm going back to my question. What's the significance? To find an air freshener in an old car is unremarkable. Well, the primary significance wasn't so much that the air fresheners were in the trap, but that they were hanging on the rearview mirror because there were other photographs of the defendant passing the same route, crossing on other days,  they took pictures of that car that matched the same timing as the defendant's crossing in that car. And on one time, an orange air freshener was hanging on the rearview mirror. The next time, it was gone. The next time, it was there. So it wasn't so much the fact that the air freshener was in the trap. It was an observation. But the main significance was the defendant's dominion and control of the car and his acute awareness of the air fresheners, mainly in the passenger compartment. But didn't it have probative value that there were air fresheners, the same as on the visible part of the car, in the part of the car that contained the drugs? Yes. That was probative. Yes. And the identity would suggest that whoever put them on the visible part of the car also put them in the trap. No, not necessarily. The government's theory of the case was never that the defendant was the one that loaded this car. Under that type of evidence, the structure evidence, customarily, someone else loads it up. Someone else modifies the car. Our theory of the case was never that the defendant was the one that loaded the drugs in the car. It was that he knew that there were drugs in his car because someone else put it in there. And if he did put it in there, we didn't know one way or the other. But from habit and custom and from the routine of these type of cases, usually someone else would have done it and would have done it with his knowledge because it was the defendant's car. The defendant had it for four months. He had purchased it. And the drugs were in the air trap of the air conditioning that he used while driving through the Arizona and California deserts. And the jury knew that there were air fresheners and that they had been lost or destroyed? Yes. Defense made the inquiry about that and that one of the air fresheners was at the bottom of the air trap. So the condensation soaked it up. It's your typical commercial pine tree air freshener. It's to hold the scent. Obviously, it's porous. So that air freshener was ruined. It was wet. And then he had a couple packages, another one in between the stack of packages. So it was the type of thing where the agent recorded the observations and that all the reports gave indication to the defendant that, hey, there would be air fresheners here. Unless my colleagues have any questions, can I ask you to move on to the McNabb-Mallory issue? Yes. The defendant or the appellant in this case is attempting to state that there is absolute immunity for any statement made outside the six-hour rule, much like this clock that's clicking right now. It's like a chess clock. They would have the law state that once you reach the six hours, you stop the clock. I don't hear her position as being that hard and fast. It's a rule that can be excused if there's a reason to excuse it. And then she's saying it's a hard rule if there's no reason to exclude it. And in this case, the statements began within the six-hour rule. And also I have a whole list of cases that say that it's not a per se rule. It's not a stop the chess clock type of issue. That the second statement, it's not that they're damaging. What they're arguing is that because they're damaging, they should be suppressed. It was a continuation of the original interrogation. They were speaking with the defendant. After the defendant said, I didn't know there was drugs in the car that I had had for four months. The air fresheners are just a coincidence. Then the defendant was to be processed. And while he was being processed by the border patrol, the agent said, hey, I need to get the ages of your children. The defendant then started speaking. The agent didn't understand everything he was saying. So he called him back. Why did he need the ages of the children? Is that routine? Yes. That's one of the routine things that they always obtain in the routine booking questions. You understand the scenario that could be of concern is if the agent decided he's going to hit the emotional button shortly before the expiration of the six hours. And then claims an ability to continue having hit that button just beyond the six hours. I can understand that inference. And I think both I and the agent thought he was that clever. But I think that the record and the finding, actual findings by the district court was that there was no bad faith, that it wasn't intended to extract a confession, and that it was such a short time after the end of the initial contact and the reengagement that it was really a continuation of it. And that I think that the review of the record shows that it wasn't with the intent to try to have the emotional buttons, that the agent didn't know what the defendant was saying, so he called Agent Lewis back to interpret. And the defendant never really did confess. So he did have the presence of mind to deny. Well, he made an incriminating statement. He made an incriminating statement. But the McNab rule is not an absolute stop the chess clock. Would you agree that if the interrogation had started ten minutes after the six-hour period and he had made the same incriminating statement, then you couldn't use it? No, I wouldn't. Because what that question assumes is a bright line. It has to be ten minutes. It has to be 11 minutes, not six minutes. So there are circumstances in the wide world where ten minutes would be reasonable, where six minutes would be unreasonable, or 15 minutes. And that really is the kind of line of cases analyzing this delay in the presentment. What was the reason for delay? Well, the main reason was because of the distances that they had to travel. The distances of the agents, that suggests a delay intended to permit interrogation. Is that a permissible reason for delaying? It's a justifiable delay, because they had to travel greater distances. The agents had to. When the Border Patrol seizes drugs, then they call the DEA. The DEA, who may not be in the office, they may be at home or somewhere else, then have to travel out. And I'm at a three-second deficit, four-second deficit. So be it. Thank you for the argument. We thank both counsel for your helpful arguments. The case to start is submitted.
judges: Cogan, Schroeder, Clifton